IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREDERICK BANKS** | : | CIVIL ACTION NO. 1:06-CV-01549 |
| Plaintiff | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | |
| **THE MULTI-MILLION** | : | |
| **DOLLAR MISTAKES OF JULIE** | : | |
| **NICKLIN, ET AL.** | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

Presently before the court is a motion to dismiss the Bivens[1]-styled complaint of plaintiff Frederick Banks ("Banks"), or, in the alternative, for summary judgment, filed on behalf of several prison officials from the Federal Prison Camp at Canaan ("FPC-Canaan" or "USP-Canaan") in Waymart, Pennsylvania (collectively, "defendants").[2]  (Doc. 15.)  For the reasons set forth below, the motion for summary judgment will be granted.

---

[1] Bivens actions are the federal counterpart to § 1983 claims brought against state officials. Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004) (citing Brown v. Philip Morris, Inc., 250 F.3d 789, 800 (3d Cir. 2001)). "[C]ourts have generally relief upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a Bivens claim against federal officials." Schrob v. Catterson, 948 F.2d 1402, 1409 (3d Cir. 1991).

[2] Named as defendants are the Multi-Million Dollar Mistakes of Julie Nicklin and Her Minions of USP-Canaan; Cameron Lindsay, the warden of USP-Canaan; Julie Nicklin, camp administrator; Marc Renda, camp administrator; UDC Counsel Unknown Named Members; Unknown Named Members of Administration Conspiring with USP-Canaan named parties; Henry Sadowski, Northeast Regional Counsel; and USP-Canaan.

**I.      Statement of Facts**

Banks' complaint raises two issues surrounding events which allegedly occurred between April and August of 2006. (Doc. 1.) Initially, Banks claims that defendants have denied him the constitutional right of access to the courts. Banks also claims that defendants have denied him the constitutional right to freedom of religion.

In response to the complaint, defendants filed a motion to dismiss, or, in the alternative, for summary judgment, arguing in pertinent part that Banks has failed to exhaust his administrative remedies with respect to both issues. (Doc. 15.) Defendants' brief in support of the instant motion reflects that Banks filed twenty-four (24) requests for administrative remedy while incarcerated at FPC-Canaan on various topics and to various levels, including both the Northeast Regional and Central Offices.[3] (Doc. 16-2 at 7-21.)

**A.      Access to the courts claim**

Banks claims that defendants are involved in a "civil conspiracy" to deny him his constitutional right of access to the courts. (Doc. 1 at 1.) He asserts that FPC-Canaan mailroom staff refused to accept incoming packages which contained transcripts of his trial necessary for the filing of an appeal. He further claims that,

---

[3] Defendants have submitted a declaration of L. Cunningham, supervisory attorney at the United States Penitentiary at Lewisburg, Pennsylvania, which verifies the accuracy of all the administrative remedies pursued by Banks, and the responses thereto, while he was incarcerated at FPC-Canaan. (Doc. 16-2 at 3-6.) Also attached as exhibits are the relevant SENTRY computer-generated records of Banks' exhaustion attempts. (Id. at 7-21.)

as part of the conspiracy, defendants "curtailed Banks' legal cases and lawsuits by not providing him with and obstructing Banks' administrative remedy process." (Id.)  In support, he asserts that in order to prevent him from filing an appeal defendants placed him in administrative custody and rejected his administrative remedies.

Defendants submitted a declaration made under penalty of perjury of A. Farley, an inmate systems specialist at USP-Canaan, which details the refusal of Banks' incoming package at issue in the complaint.  (Doc. 16-2 at 44-45.)  Defendant Farley recalls that the incoming package addressed to Banks did not arrive at FCP-Canaan with a package authorization form or a stamp indicating that it was legal mail.  (Id. at 44.)

The Bureau of Prisons ("BOP") Program Statement 5800.10, Mail Management Manual, at Chapter 3, page 9, provides that, "All incoming inmate property packages must be authorized in advance unless otherwise approved under another Bureau policy.  An Authorization to Receive Package or Property, BP-331 (BP-S331) shall be used for this purpose."  (Id. at 47.)  While the policy provides that legal materials need not be pre-approved, they must be marked with words such as "Authorized by Bureau Policy," intending to alert mail room staff that the materials do not require prior approval.  (Id.)  The policy further provides that, "[a] package received without an appropriately completed BP-331, or without markings indicating authorized materials enclosed, is considered unauthorized and shall be returned to the sender."  (Id.)  Pursuant to this BOP policy, because Banks' package

did not have a package authorization form or a stamp marking it as legal mail, it was refused and returned to the sender. (Id. at 45.) The package was not opened, nor were its contents inspected at any time prior to its refusal. (Id.)

In support of his contention here, Banks submitted, as an exhibit filed with his complaint, a copy of his administrative remedy, 421712-F1, filed on July 28, 2006, on a BP-229 form. (Doc. 2.) In that remedy, Banks complains of his detention status and a resulting inadequate access to legal materials necessary for filing an appeal. (Id. at 2.) The exhibit indicates that his remedy was rejected on July 31, 2006, for failing to attempt informal resolution prior to submitting the remedy. (Id. at 1.) The exhibit also contains a section of the USP-Canaan inmate handbook, highlighted by Banks, which states that "Appeals of . . . UDC actions are accomplished via submission of a BP-229 to the Warden. (See section regarding the Administrative Remedy Procedure for details regarding filing.)." (Id. at 3.) In a statement attached to the exhibit, Banks seemingly argues that by filing the BP-229 form, it was not necessary for him to follow the administrative remedy procedure, and therefore exhaustion was futile. However, there is nothing in the record indicating that Banks took any further action on this issue before filing the instant action.

    **B.**    **Freedom of religion claim**

In his second claim, Banks contends that defendants subjected him to retaliation for engaging in his right to religious freedom and practice. He states that when he requested religious writings relating to his religion, Thelema, as well

as a plot of land on prison grounds on which to build a pyramid temple for the practice of Thelema, defendants responded by placing him in administrative custody and subsequently transferring him to another BOP institution.[4]

The record reflects that Banks filed administrative remedies on this issue. On July 19, 2006, Banks filed remedy number 420485-F1, requesting the religious writings, access to land for religious purposes, and a new job. (Doc. 16-2 at 15.) This remedy was rejected on the same day, July 19, 2006. (Id.) In that rejection, Banks was advised that his request pertained to several unrelated issues, and that he must file a separate complaint for each unrelated issue.[5] (Id. at 4.)

On July 20, 2006, Banks re-filed the remedy 420485-F2, again requesting the religious writings, access to land for religious purposes, and a new job. (Id. at 16.) However, he further explained that his request for a new job was based on religious reasons. (Id. at 5, 20.) Because the issues were related, the remedy was accepted.

On July 27, 2006, the administrative remedy was granted in part. (Id. at 21.) In his response to remedy 420485-F2, defendant Lindsay indicated that Banks had been given a form, "New or Unfamiliar Religious Components Questionnaire," to

---

[4] The record does not indicate when Banks was placed in administrative custody. He was transferred from USP-Canaan on August 7, 2006. (See Doc. 16-1 at 9.)

[5] Pursuant to the BOP administrative remedy program policy, "[t]he inmate shall place a single complaint or a reasonable number of clearly related issues on the form. If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue." 28 C.F.R. § 542.14(c)(2).

5

complete with information regarding his religious requirements. (Id.) Although Banks had initially responded, the form was returned to him for additional information. (Id.) Banks was advised that once the completed form was returned, the BOP's Religious Issues Committee in Washington, D.C., would review his requests for religious writings and a plot of land. (Id.) With respect to his request for change in work placement due to his religious beliefs, the remedy response directed Banks to provide information in support of that request to his work detail supervisor. (Id.) He was informed that his prison unit team would have provide approval for a work reassignment. (Id.)

Additionally, Banks was advised on how to appeal the remedy response should he be dissatisfied with the response. (Id.) Banks did not appeal any of the issues relating to his requests for religious writings and a plot of land for establishing an outdoor worship area, although he did file or appeal administrative remedy responses on other issues in the days following the partial grant of this remedy.[6] In his response to the instant motion, Banks asserts that because defendants partially granted his remedy, exhaustion on this issue became "futile and unnecessary." (Doc. 17-1 at 1.)

---

[6] On July 28, 2006, Banks filed administrative remedy 421712-F1 with USP-Canaan, requesting a return to FPC-Canaan general population from administrative custody, which was rejected on July 31, 2006, for failure to seek informal resolution. (See Doc. 2; Doc. 16-2 at 19) (discussed herein). On August 3, 2006, Banks appealed administrative remedy 419128-F1, requesting copies of FOIA documents in a central file, to the Northeast Regional Office, at remedy appeal 419128-R2. (See id.)

**II.    Standard of Review**

    **A.    Motion to dismiss**

Defendants have filed a motion which, in part, seeks dismissal of the complaint on the grounds that Banks' complaint fails to state a claim upon which relief can be granted, as provided by Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The motion, however, goes beyond a simple motion to dismiss under Rule 12(b)(6) because it is accompanied by evidentiary documents outside the pleadings contravening Banks' claims.  Rule 12(b) provides, in pertinent part, as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

FED. R. CIV. P. 12(b).  The court will not exclude the evidentiary materials accompanying defendants' motion to dismiss because Banks also has been given a reasonable opportunity to present material relevant to the motion.  Thus, defendants' motion to dismiss, or, in the alternative, for summary judgment, will be treated solely as seeking summary judgment.

    **B.    Summary judgment**

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury." Pappas v. City of Lebanon, 331 F. Supp 2d 311, 315 (M.D. Pa. 2004).  Faced with such a motion, the adverse party must

produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. FED. R. CIV. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Corneal v. Jackson Twp., 313 F. Supp 2d 457, 464 (M.D. Pa. 2003). "Such affirmative evidence - regardless of whether it is direct or circumstantial - must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989). Only if this burden is met can the cause of action proceed. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); see FED. R. CIV. P. 56(c), (e).

## III. Discussion

Defendants seek dismissal of the complaint partially on the grounds that Banks failed to exhaust his administrative remedies with respect to each of his claims as required by the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996).

The PLRA requires a prisoner to present his claims through an administrative grievance process before seeking redress in federal court. The act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of

relief that may be gained through the grievance process.  See Porter v. Nussle, 534 U.S. 516, 532 (2002); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).  "[I]t is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp 2d 884, 894-95 (S.D.N.Y. 1998) (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975)).  The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis, 204 F.3d at 71.  The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 126 S.Ct. 2378, 2387 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 2386.  Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Id. at 2387 (quoting Nussle, 534 U.S. at 525).  Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim.  Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

  A prisoner does not have to allege in his complaint that he has exhausted administrative remedies.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).  Failure to

9

exhaust available administrative remedies is an affirmative defense. Id. Therefore, it must be pleaded and proven by the defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

An inmate may challenge any aspect of his or her confinement using the BOP's administrative remedy procedure, which is set forth at 28 C.F.R. §§ 542 *et seq*. An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. Id. at § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. Id. at §§ 542.15(a) and 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office.

Moreover, an inmate must take advantage of all administrative remedies available to him. See Brown, 312 F.3d at 111. An administrative remedy may be found to be unavailable where a prisoner is prevented by prison authorities from pursuing the prison grievance process. See e.g., Brown, 312 F.3d at 112 (noting that prison security officials told inmate he must wait to file a grievance until the investigation was complete); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (finding that inmate put on grievance restriction).

After careful review of the record, the court concludes that Banks has not set forth a compelling reason to excuse compliance with the exhaustion requirement

on either claim.  With respect to Banks' claim of conspiracy to deny him access to the courts, there is no record evidence that when prison officials rejected administrative remedy 421712-F1 for failure to first seek informal resolution, Banks was subsequently precluded from appealing that decision.  In fact, the record shows that the appeal was available to Banks by virtue of the fact that he was filing and appealing administrative remedies with respect to many issues during his entire confinement at USP-Canaan.  Thus, it is apparent that he was afforded the opportunity to appeal this issue through the administrative remedy process and simply chose not to do so.  As such, Banks' failure to comply with the procedural requirements of USP-Canaan's administrative remedy procedure renders this claim procedurally deficient.  See Spruill, 372 F.3d at 227-32.

Further, Banks' futility arguments with respect to this claim are unavailing. Initially, under the standards set forth in Nyhuis, Banks' contention that it would be futile to follow the administrative remedy procedure in light of prison officials' rejection of his BP-229 form is not an adequate basis to excuse exhaustion.  See Nyhuis, 204 F.3d at 71.  See also Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006) (reiterating the no-futility exception by rejecting an inmate's contention that exhaustion should be excused because prisoner grievances were regularly rejected). In addition, Banks' argument that exhaustion of this claim was futile because "defendants only allowed me to exhaust the remedies so far in some cases, in others I was denied remedies altogether," (Doc. 17-1 at 1), fails.  While he claims that he

11

requested remedy forms from BOP staff and did not receive them,[7] there is no evidence of this apparent self-serving assertion. To the contrary, the record shows that Banks was filing and appealing administrative remedies often. Again, he was afforded the opportunity to appeal the decision and chose not to do so. Banks' decision not to appeal the response with respect to this issue does not render exhaustion futile and therefore excused. See Nyhuis, 204 F.3d at 71. Thus, defendants have satisfied their burden of establishing that Banks' claim was not administratively exhausted.

Turning to Banks' claim of violations of his right to freedom of religion, the court finds that this claim is also procedurally deficient and therefore cannot proceed. While Banks did file an administrative remedy with respect to this claim, the BOP response partially granting his request for religious writings and a plot of land gave detailed instructions for completion of the request. Specifically, Banks was required to complete the process by returning a properly completed "New or Unfamiliar Religious Components Questionnaire." Banks was informed that if he was dissatisfied with the response he could appeal to the regional director. However, there is nothing in the record to indicate that Banks followed the response's directives or appealed the response to the regional director. Therefore,

---

[7] Banks claims here that BOP staff at institutions to which he has been subsequently transferred have also obstructed his access to the administrative remedy process. (See Doc. 17-1.) However, this case only names as parties prison officials from USP-Canaan; thus, any allegations of wrongdoing on the part of prison officials at other institutions is not at issue here.

Banks' failure to comply with the requirements set forth in the BOP's administrative remedy procedure renders this claim procedurally deficient. See Spruill, 372 F.3d 227-32.

Moreover, Banks' futility argument with respect to this claim is unconvincing. Banks concedes that he did not appeal the partial grant of his remedy; rather, he claims that an appeal to BOP officials would be "futile and unnecessary," because the remedy was partially granted. This is simply not the case. Banks was not satisfied with the partial grant of his remedy. Therefore, pursuant to the BOP's administrative remedy procedure, he was required to submit an appeal to the regional director prior to filing suit in this court. 28 C.F.R. § 542.15(a). Clearly, Banks' argument that it would be "futile and unnecessary" to appeal the remedy response is not an adequate basis to excuse exhaustion. See Nyhuis, 204 F.3d at 71.

In sum, there is nothing in the record to create a genuine issue of material fact with regard to whether Banks exhausted his administrative remedies with respect to the issues raised in the complaint. Defendants have met their burden of showing that Banks has failed to exhaust those administrative remedies before filing his complaint. Consequently, the court will grant defendants' motion for summary judgment.[8]

---

[8] Because exhaustion of administrative remedies is a threshold issue, there is no need to address defendants' alternative arguments.

An appropriate order will issue.

      <u>S/ Christopher C. Conner</u>
CHRISTOPHER C. CONNER
United States District Judge

Dated:       September 20, 2007

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREDERICK BANKS** | : | **CIVIL ACTION NO. 1:06-CV-01549** |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **THE MULTI-MILLION DOLLAR MISTAKES OF JULIE NICKLIN, ET AL.** | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 20th day of September, 2007, upon consideration of defendants' motion for summary judgment (Doc. 15), it is hereby ORDERED that:

1. Defendants' motion for summary judgment (Doc. 15) is GRANTED.

2. The Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff.

3. The Clerk of Court is further directed to CLOSE this case.

4. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

      S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge